May it please the court, my name is Robert Rabe. I represent the appellant Christopher Johnson. The Fowler case requires probability over possibility when it comes to prove the federal nexus in witness tampering cases. The jury had to decide whether there was a reasonable likelihood at the time Christopher Johnson turned in his misleading report about the assault on the inmate. It's the assault on the inmate that's the possible federal offense. Would it have come to the attention of federal law enforcement officers? Would that assault have come to the attention of federal law enforcement officers? And the element of the offense, the federal nexus, is required to be proven in this case at that time. The defendant contends there was insufficient evidence that there was a reasonable likelihood that the assault would have come to the attention. The jury has to answer the question. They have to find was there a reasonable likelihood that the assault would have been investigated by federal law enforcement officers in this case. The government suggests basically two reasons why. The prosecution use of force expert reviewed... Was the jury so instructed? The jury was instructed... On a reasonable likelihood standard? Yes. The jury wasn't presented the evidence to support the reasonable likelihood. Trying to make sure they got the right instruction. Yes. It's claimed that the use of force expert reviewing the case read the report. Does that mean there was a reasonable likelihood that law enforcement officers at the time would have come? No. That just means that the prosecutor gave his use of force expert all the material. The other suggestion by the government in this case that there is a reasonable likelihood is the defendant answered a question in a test years before on the standard that's applicable to all... Unconstitutional or should have known that but that doesn't have anything to do with whether he realizes there was a federal crime. Even if he knew there was a federal crime that shows knowledge and it only shows there's a possibility. The fact that this, the assault, could be a federal crime only means there's a possibility that federal investigators could investigate. Doesn't mean it would have happened in this case. We show the court in our briefs cases where it's been demonstrated there's a reasonable possibility. We say Lopez. In that case there was a current federal investigation going on. That's one of the factors that Fowler states. But we also have United States versus Mason. In that case they wanted to crack down on bias, gay bashing type cases. So the FBI, it was part of the evidence that the FBI would regularly monitor local arrests, contact local authorities. They were proactive in searching out these kind of cases. That was given to the jury. There's nothing similar in this case. You didn't put in any evidence either though. You didn't put in, I mean, for example, there might be evidence available as to how many of these kinds of prosecutions were brought nationally over the past 10 years. I assume it's pretty minuscule. But you didn't put that on. In other words, civil rights prosecutions based on assaults in prisons or jails, I assume it's really small. Well, especially a case like this where there's no injury to speak of. But you didn't put it on. The point is that you didn't put evidence on. I mean, there's just a vacuum in the evidence. I understand there's a vacuum in the evidence, so it's their problem. But you didn't do anything. In United States v. Robinson, federal and law enforcement worked together. They routinely conducted joint investigations. And this was a drug case. And they showed how previously they had investigated together large drug cases. So in this case, that would demonstrate in Robinson. So what inference does one draw? You know, wasn't the problem here that they failed to note in their reports the mean? That's correct. That's why the report was deemed to be misleading. Right, right. So why wouldn't they put that in the report? I mean, why wouldn't they include that? Why wouldn't he include that information in his report? His testimony is he didn't see it. He didn't see the incident? He didn't see because he's holding down the hat. He obviously lost that. He lost that. The point is not why they wouldn't put it in. Presumably they didn't put it in because they didn't want people. He didn't want his supervisor to know. And he didn't want to be prosecuted. But the question is, did he not want to be prosecuted? Locally. Right. Or fired. But what's complicated about this is it's not an intent requirement. He doesn't have to know. It's a very fine line, right? Because under Fowler, it isn't that he has to know or intend to obstruct Federal as opposed to State authorities. It just has to be that there is a reasonable likelihood that it will eventually end up with Federal authorities. Yeah. His intent could have been I didn't want to tell my supervisor because I didn't want to be reprimanded. But his intent is irrelevant even after this Federal nexus question. But the prosecution still has to prove it has to go from Santa Barbara somehow to Federal law enforcement. We don't know. And that there was a reasonable likelihood at the time he did it that it would. Yes. Not that he had to know that. He didn't have to know that. Okay. Counsel, can I just interrupt for a minute? It's not one report, right? It's three reports, isn't it? It's a series of reports. He was supposed to do the report. First of all, it's a glaring omission. But it was repeated. It's not three. And it's all captured on film. And surely he was aware and the jury was aware that it was all captured on film. This occurred in a jail, in a detention facility, right? Hence the rationale that he might not have been misleading since everybody knows it's captured. It's not three reports. There's a the first report. It's a safety cell report, right? Safety cell report was conceded to be accurate enough for the safety cell report rationale. Why we have to move him into the safety cell. It's the incident report that... Hold on. When you say accurate enough, it said nothing about the kneeing and kicking, right? Nothing. It doesn't have to. That one doesn't have to. But, counsel, the question is it didn't, right? It did not. It didn't. Okay. So then what's the second report called? That's the incident report. When somebody reports that they have suffered pain, Christopher Johnson, once he learned that from the nurse, immediately reported that to his supervisor. So when you said there's no injury, in fact, the victim reported pain. That's how this came out, right? When I say injury, I was talking about the injury that might lead to federal prosecution, a death in jail, a brutal beating where hospitalization occurs, broken bones, lost teeth, loss of sight. It's merely pain in this case. Well, I'm not sure you want to go down that path because that's a very concerning response to me. But what's the third report? I think it's the one that wasn't followed up on, right? It's the use of force report that contains the same information that's in the incident report. It's an identical report. It's for internal use only. It's for statistics. What happened with that report? That was not done. So since it wasn't done, it can't be misleading. He didn't prepare that one. He didn't prepare that one. Right, he didn't prepare it at all. He didn't prepare it at all. And it's for statistics. What kind of statistics? To know how many of these type of incidents are internal in Santa Barbara. Right. But it contains the same information. A report that's not prepared can't be misleading. So the only misleading report is the incident report. A report that's not prepared can't be misleading. He was ordered to prepare the report. He was supposed to prepare the report according to policy, and he didn't. I surely read it as yet another attempt to try to hide that this incident took place. Am I missing something? What we're missing is how the report gets to the ______. I understand that's the question on appeal. But when you said that a nonexistent report can't be misleading, I guess I'm just left somewhat incredulous at that statement. Am I right that these answers are not ______? You're not challenging the evidence as to whether or not it was ______. I understand you don't agree with it, but there was a conviction saying that this was, in fact, misleading. Correct. And the only element of the statute that's at issue is this federal officer nexus question. Correct. That's what we're here on appeal. That's the question. Even though you keep telling us that he really didn't do it on purpose, but that's not what we're talking about. I'm trying to answer the questions of the court. Okay. And the questions are prompted by your presentation of the facts, Counsel. Did you want to respond to that, or do you want to hold ______? I'll give you a minute for rebuttal if you want to sort of gather your thoughts. Okay. Let's hear from the government. Good morning, Your Honors. May it please the Court, Bruce Reardon appearing on behalf of the United States Plaintiff Appellee. And to cut to the chase, I'll respond to several points that were raised. You should begin by telling us all of the evidence in the record that meets the Fowler standard. Yes, Your Honor. You're not contesting. Well, I guess you are contesting whether Fowler applies here or not. We're not contesting Fowler's standard, and we're not contesting that Fowler can apply. We tried to write the brief as artfully as possible, and hopefully we were somewhat successful, particularly in our argument section and in the final footnote, to point out that we are not contesting Fowler's application to a B-3 case, even though B-3 cases are, as this Court knows, somewhat different than the A-1-2s of Fowler, a little broader, a little more language, misleading conduct versus other. There's some different language. What we are challenging, although we don't think it's an essential challenge, the Court, as the District Court did, can take, and we think the District Court got it right in applying Fowler. We just don't think Fowler applies here because Fowler, and this is something that's overlooked by our friend and opposing counsel, is Fowler's hypothetical communication situation, the case of the witness who's killed, the police officer in that case, before he or she can communicate. And for that hypothetical communication situation, Fowler comes up with a test that seems to be very workable in the federal courts in the several years that it's been used, although not frequently addressed in this Court, Ninth Circuit. We have an actual transmission, and that goes back to some of the questions by this Court and Judge Christin. The incident report, the safety cell report are both at issue, as well as, to go to the knowledge of the defendant, his comment. But what's hypothetical is whether at the time he wrote the report, not that he had wrote it, to know, that's not the question, but was it reasonably likely, is that the language? Correct, Your Honor. That there would have been a federal prosecution, or that this would have gotten to a, this would have deflected a federal investigation, meaning there had to be a federal investigation, and that this had somehow to have an impact on it. And the test of Fowler, and I'd like to point out a couple of things that were raised in the papers, and then again this morning. Fowler clearly rejects, and in fact, one of the cases the defendant relies on, Smith from the Fourth Circuit, articulates how Fowler clearly rejects a probabilistics test, or a probability test. Fowler expressly states it's not a more than likely test. And Smith from the Fourth Circuit. Well, it's still a probabilistic test. I mean, it has to be. It may not be more likely than not, but it has some, when you say reasonably likely, it has some kind of notion about how likely. Fair enough, Your Honor. Higher than possibility and lower than probability is how Smith from the Fourth Circuit puts it. Okay. But it's not, so it is probabilistic. It's simply not more than likely than not. Okay. Fair enough, Your Honor. I don't mean to mince words on that subject, but it is a lower standard, we believe. A lower threshold is a better word. It's a nexus. It's a threshold. Okay, but you put on no evidence. I mean, it's a question I asked before. I mean, I'm just, as a wild guess, as to any incident like this in a local jail, the likelihood of it being of interest to a Federal prosecutor is pretty minuscule. That's a wild guess, but there's nothing in the record. Allow me to retort on that. We do have a civil rights section in my office, and I'm a part of that. The agent in this case was a civil rights squad agent who, the case was referred to her from the Santa Barbara County District Attorney's Office. All right, but there's no evidence. There's not even that evidence. But responding to the question on minuscule, I agree that's not in the record. My point is I had a guess about, I'm guessing it's minuscule. I don't know. But if it's not, whether it's minuscule or isn't minuscule, there's nothing in the record. Fair enough. Let me give you what's in the record, if I may. We have both experts, Martin and Cameron, talking about receiving FBI reports and Santa Barbara County investigation reports. Martin, the government's expert, I think it's at ER 434, talks also about the fact that this inmate, CO, as he's known, reported his injury to his public defender. What's the significance of that? It's just another fact that we think adds to the possibility, the quantum of proof, in and of itself, Your Honor, would that fact alone be enough? But it's another fact that adds to the quantum of proof. What are all the facts? Tell us all the facts. And furthermore, we have the. . . So he reported to a public defender. The local people can refer to the FBI. We're trying to establish a chain of logic, Your Honor, as Begay points out. And I know Begay was an opinion that the court. . . At the time that this person filled out this form. Well, and you have Fowler and its progeny allows us to look back in time from. . . Right, so in other words. . . The fact that an investigation came. . . But we have to. . . So that's why it is hypothetical, is what would have. . . What he would. . . What. . . At the time he filled it out, what was the likelihood that this was going to get to a federal investigation and a federal investigator? And it only has to be reasonably likely. It's not a precise. . . All right, reasonably likely. We have the fact that the officer himself is trained in constitutional standards. What does that prove? That indicates that it's known by custodial deputies like Mr. Johnson, who is also a training officer. That he's going to be investigated for a federal crime? That he can be investigated for a federal. . . No, it doesn't say that. It says that he knows it was constitutional. It doesn't say anything about a crime. It doesn't say it, Your Honor, but it's a reasonable inference. It's a reasonable inference. Why is it a reasonable inference? The reasonable inference is the common sense inference, as the jury's instructed, that there is federal oversight of pretrial detainees like CO. . . I mean, it is a fact that it's a federal crime to do something of this sort that's  That's right. But, I mean, particularly because you're not trying to demonstrate anything about the officer's, Johnson's, what he knew. I don't know what relevance it is, what his training was about Graham or anything else. What relevance is that? Training goes to the reasonable likelihood that when he, when this officer did prepare the glaring omissions, because this was a brutal beating, despite opposing counsel's statements, when . . . and the video compared to the statements are glaringly . . . And that's just as relevant as what he was trying to tell us about the fact that his client . . . But if I may, and I apologize, Hummer, another case cited by the defendant, is a case from Maryland, a district court case. It doesn't have a published opinion, but its memorandum of disposition from March 25, 2014, is instructed. It's a case where the district court in that case, and I know it's a district court, not in any way binding on this court, says that the glaring distinction between what an officer reports and an incident can also give rise to the reasonable inference that the officer, when that officer is intentionally misleading, when the conduct is happening . . . Well, I certainly suggest he was trying to obstruct somebody. The question . . . but it's not an intense standard. Well, no, it's not. It's simply a quantum . . . So why are we worrying about what he was trying to do? At this juncture, you've won everything else. I mean, there's no dispute about the evidence on every other point. It's only at this junction. We're only arguing, Your Honor, that that, that the glaring omission, the difference between what we see on the video and what we see in the reports is one additional indicia that this person was seeking to obstruct. Then you add to the fact . . . He was seeking to obstruct, but who was he seeking to obstruct? That's the problem. Counsel? Any Federal investigation to include Federal. Excuse me. May I ask a question? Opposing counsel just represented that the third report, which was never prepared at all, is a report that's used to gather statistics about this type of thing. Was there anything in trial or through the expert testimony about that fact? There was no . . . there was nothing in trial about statistics. There was nothing in trial specifically about the court's point that the third report was not prepared. It should have been, but was not. An investigation was by Sergeant Osborne. Sergeant Osborne testified that he was told by his lieutenant to stand down after a few days, and he wasn't sure how to take that, whether it was an investigation or not, was his testimony. Can we come back to . . . Yes, so what was the next piece? All of the evidence, all of the evidence. On this point, only on this point. Only on this point. Your Honor, it's the evidence that we summarize is the expert's testimony that the district court relied on, both Mark . . . Which was what? Which was what? The fact that there were FBI reports and Santa Barbara County investigative reports, as well as the comment to the public defender. In other words, that there was an FBI report. There were FBI reports. There were Santa Barbara County reports. Both investigators, both experts read them, suggestive of the fact that there was some kind of federal investigation, that the fact had made it to the feds. There was further evidence that this individual, Mr. Johnson, had taken an oath to the Constitution. We assert that that is a Constitution that's both federal and state. It's not limited. In other words, the limiting principle that we would object to, that our opposing counsel is asking for, would be that it's only for state investigation or local investigation. When, in my experience going back to 91, the Federal Bureau of Investigation had oversight over the jails, both local and federal, particularly for pre-trial detainees. That's an area that, while the court suggests it may be minuscule, I can respond . . . But that's my point. I don't know if it's minuscule or isn't. My point is that there's no record on it. Fair enough. The record, we believe, Your Honor, is sufficient . . . Would have been that hard. Well . . . Counsel, how long had this individual worked as a sheriff's deputy? I believe it was approximately . . . I'm sorry, custody deputy? As a custody deputy, I believe it was approximately four to six years, but I could be wrong and an opposing counsel would know better than me on that. All right. What was the scope of the evidence on their training that they get? Relatively a balanced scope. We had Sergeant Dickey testify with regards to the training that the officers received, both generally and specifically. In this case, Santa Barbara County Sheriff's Department separates its law enforcement deputies, and so the custodial deputies, like Mr. Johnson, work in the IRC, in the local prison and jail. As part of that training, is there any instruction that, you know, look, if you're involved in a beating of a pretrial detainee, the feds might come and investigate? Well, I will add that there was no reference to the feds in the trial, to be perfectly clear on the record. The feds will come and investigate. Language like that was not there. But I also point the court to the use of force policy. I would point the court first to the government's excerpts of record, which we believe from the incident reports, which were not in the excerpt of record, through the use of force policy, 300.5, which talks about the need for an investigation when there's a use of force. Again, it's the need for an investigation. Could someone say, oh, that's only a state investigation? Possibly. But this now, at this stage, could no reasonable trial or fact find that there was no reasonable likelihood? And we would submit, Your Honor, that that's a threshold that can't be met here, that no reasonable trial or fact could find that there was no reasonable likelihood. We think the district court got it right in a painstaking review of the evidence. But I guess this is the problem, and this is what Fowler was concerned about. If that's true in this case, on this record, it will always be true. I would suggest not. Now, is there any case in which somebody actually does get prosecuted by the feds for a civil rights violation, where you couldn't say, is there anything in this record that distinguishes it from any other case? Which is, maybe it's a crazy statute, but there seems to be an element here that seems to be independent of the fact that there was, in fact, a federal prosecution with a federal crime, and that the person was, in fact, trying to obstruct law enforcement in general. There's something else. Knowing my time is out, I'll only, if I may. Go ahead. Answer Judge Berzont's question. Thank you. Thank you, Your Honor. Dispute the use of the word element. There is a nexus. There is a nexus test. And Fowler and his progeny make, I think, clear that it's not element, and I suspect the court was using that term colloquially. Well, if you're asking about the indictment problem, no, I'm not saying that. It is an element in the sense that the jury had to find it. It's an aspect. Well, the jury had to find it. The jury certainly, and they were properly instructed, and that's at ER 1058, by the way, the court asked. The jury was properly instructed. We believe the quantum of proof was met. So, just briefly, if this record is sufficient, is there any chance that there's any prosecution of this kind in which the element won't be found? Yes, Your Honor, there is. I mean, you take, you back out Martin and Cameron's testimony without investigators, without, as the district court said. The district court did say, look, there could have been more evidence in here. Well, there obviously had. If there was a prosecution, there was an investigation. I mean, I hope you don't investigate, you don't prosecute without investigating, so. It's a chain of logic and reasonable inferences, Your Honor. There is, without the training evidence put in, without the evidence about the defendant's specific training in constitutional policing. It's really, really totally irrelevant, because it's not an intent. First of all, because it doesn't go to the crime, and second of all, because intent isn't the question. Well, we do believe that the knowledge that someone is under constitutional standards is relevant, although we understand the court is saying that we may have a difference of opinion. Okay. Thank you, Your Honor. Let's let it end with that. Thank you very much. We'll hear from minute rebuttal. Your Honor, two quick points. Fowler says the fact that there is a prosecution doesn't mean that there's a likelihood. All that it means is there's a possibility. You can't take the fact that the case is being tried and say, ah, we ended up here. There must have been the possibility. The fact that expert witnesses are called during the trial and report on what they've received doesn't mean there's a reasonable likelihood. Referencing Hummer, the case that was just talked about, in that case, they called the FBI agent, which was not done here. The FBI agent said, we prosecute local law enforcement attacks on inmates. This is part of our jurisdiction. The FBI officer testified that pre-incident, before this case, we've received reports from our local law enforcement officers about such cases. The local law enforcement officer testified, I've worked with the FBI in the past. I've given the FBI such investigative reports as I did in this case. That's the evidence in Hummer that shows the reasonable likelihood. That's the evidence that's missing here. That similar evidence was given in all the other cases that I cited, showing the real nexus, showing how a case gets from local law enforcement to federal law enforcement. There's a gap here. The gap was not filled. There's no evidence to support it. Okay. Thank you. Matter submitted. Thank you, counsel.
judges: Paez, Berzon, Christen